■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARNELL MITCHELL, Appellant. [768 NYS2d 204]—

Judgment, Supreme Court, New York County (Ira Beal, J.), rendered May 23, 2001, convicting defendant, after a jury trial, of criminal sale and criminal possession of a controlled substance in the third degree, and sentencing him, as a second

felony offender, to concurrent terms of 4½ to 9 years, unanimously reversed, on the law, defendant's motion to suppress granted with respect to physical evidence removed from defendant's person, the criminal possession charge dismissed, and the case remanded for a new trial on the criminal sale charge.

On November 6, 2000, at approximately 2:15 P.M., an undercover police officer radioed the supervisor of his buy and bust team to report that he had just completed a narcotics purchase on the corner of 127th Street and Lenox Avenue. The undercover officer described the seller as a black male with a goatee, 35 to 40 years old, wearing a black and gray plaid wool jacket or heavy wool shirt, green pants and a black hat. The members of the team converged on the corner where the sale was reported to have taken place, but they were unable to find the seller, who had disappeared into one of the buildings on the street. The team supervisor declared the seller a "lost subject," and the team moved on to another buy and bust location.

Around 4:00 P.M., members of the team, including the supervising officer, returned by unmarked police van to 127th Street and Lenox Avenue but still did not find the seller. However, a short time later, as the car approached 128th Street and Seventh Avenue—a few blocks away from where the purported sale occurred—the supervising officer spotted defendant, who was wearing a black and gray plaid jacket, dark pants, but no hat, walking down the street. The supervising officer testified that he was "99% certain that" defendant was the lost subject the team had been searching for, based primarily on his clothing.

Although defendant did not exhibit any suspicious or criminal behavior, the supervising officer got out of the van, approached defendant, and, without explanation, grabbed him by the arm and handcuffed him with his hands behind his back. The supervising officer then contacted the undercover officer and directed him to come to where defendant was being held to confirm the identification. The undercover officer arrived approximately five minutes later and identified defendant as the seller.

While the supervisor and other officers were waiting for the undercover officer to arrive, the supervising officer observed defendant fidgeting with his hands, which were handcuffed behind his back, moving them toward his buttocks, back, belt and rear pants pockets. The supervisor, concerned that defendant might have a gun, patted down defendant, including the waistband and crotch area of his pants, but did not feel or find anything

that felt like a weapon. The supervisor then ordered a detective at the scene to strip search defendant.

The detective took defendant to the rear of the police van, which was parked on the street, in front of a church. Defendant was ordered to bend over with his head inside the back of the van, his feet on the street, and the lower half of his body outside the van. The detective put on rubber gloves, pulled down defendant's pants, and searched his buttocks area. No weapon or any prerecorded "buy" money was found, but the detective did recover two glassines of heroin from the area between defendant's buttocks. It was about 4:15 in the afternoon and still light out when the strip search was performed.

Defendant moved to suppress the identification testimony and the physical evidence retrieved from his body. The trial court denied the motion, and, following trial, the jury found defendant guilty of both criminal possession and criminal sale of a controlled substance. On appeal, defendant contends that the court erred in denying his motion to suppress the evidence, arguing that his arrest was without probable cause and that the strip search, conducted on the street, in full view of the public, constituted an unreasonable search in violation of his Fourth Amendment rights. Defendant also contends that the trial judge improperly failed to provide his counsel with notice of the contents of a jury note in violation of his federal and state constitutional rights to a fair trial.

As an initial matter, contrary to the prosecution's contention, and as the trial court found, defendant's detention by the police was an arrest, not simply an investigative detention. However, contrary to defendant's assertion, the police had sufficient probable cause to arrest defendant. The undercover officer's description of the seller was sufficiently detailed, defendant's appearance sufficiently matched that description, and, in the circumstances of this case, the arrest was made in close enough proximity to the location and time of the sale as to provide the police with adequate probable cause to arrest defendant (see People v Simpson, 174 AD2d 348, 350 [1991]; People v Mercado, 117 AD2d 627 [1986]).

The strip search of the defendant, in public view, however, was not reasonable. In determining whether a search is reasonable under the Fourth Amendment, a court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" (Bell v Wolfish, 441 US 520, 559 [1979]). An arrest does not completely deprive an individual of his privacy rights, and strip searches are, by definition, invasions of

a person's privacy. A strip search in a public place such as the police conducted here was particularly invasive of defendant's privacy rights.

A number of courts have held that a strip search incident to arrest, conducted in a *station house,* is justified only when there is reasonable suspicion that the arrestee is concealing a weapon or other contraband (*see e.g. Weber v Dell,* 804 F2d 796, 802 [2d Cir 1986], *cert denied sub nom. County of Monroe v Weber,* 483 US 1020 [1987]; *People v Jennings,* 297 AD2d 644 [2d Dept 2002]). The Court of Appeals has recently held that a body-cavity search incident to a lawful arrest, in an apartment, violated the Fourth Amendment where no exigent circumstances existed (*People v More,* 97 NY2d 209, 213-214 [2002]). In light of those cases, we have no difficulty in holding that a strip search, conducted in a *public place,* regardless of whether it includes a search of the arrested person's body cavities, is not justified or reasonable absent the most compelling circumstances, that is, circumstances that pose potentially serious risks to the arresting officer or others in the vicinity (*accord Illinois v Lafayette,* 462 US 640, 645 [1983] ["the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street"]).

The strip search in this case, conducted as it was on the street, in full view of the public, fails to meet the place or manner component of the *Bell v Wolfish* inquiry, and, therefore, the glassine envelopes containing heroin, obtained as a result of this unlawful search, should have been suppressed.

Defendant additionally contends that the trial court failed to apprise defense counsel of the specific contents of a jury note requesting, in relevant part, police officers' "written reports of the defendant," and that this failure deprived him of a fair trial. This contention is unavailing. As an initial matter, the trial court, at the very least, advised defense counsel of the substance of the jury's request, obtained counsel's agreement that no police reports were in evidence, and then instructed the jury that, because such reports were not in evidence, they would not be provided to the jury. While it would have been preferable for the court to have shown or read the note to counsel, defendant did not preserve any objection to the court's actions and defendant suffered no discernible prejudice as a result of the court's response to the jury's note (*cf. People v O'Rama,* 78 NY2d 270 [1991]; *see People v Cintron,* 273 AD2d 84 [2000], *lv denied* 95 NY2d 889 [2000]; *People v Damiano,* 87 NY2d 477, 487-488 [1996]).

Based upon the foregoing, the criminal possession charge,

which was based wholly on the evidence obtained from the unlawful search, must be dismissed. Furthermore, since the tainted evidence may have influenced the jury's determination of the criminal sale charge, the verdict with respect to that charge must be reversed and the case remanded for a new trial solely on the criminal sale charge. Concur—Tom, J.P., Sullivan, Rosenberger, Lerner and Friedman, JJ.