OPINION OF THE COURT
Caesar D. Cirigliano, J.
*482 This is defendants’ combined Dunaway/Mapp and Gethers hearing. On June 13, 2002, Detective Jose Rosario, an experienced narcotics officer, was working back up as part of a narcotics enforcement team. As the team was setting up a “buy and bust” operation in the vicinity of East 172nd Street and Manor, Detective Rosario received a radio transmission from the team’s undercover officer advising that he had just observed a narcotics sale involving three individuals on, 172nd between Manor and Ward. The three were described as male blacks: one wearing a white t-shirt and blue jeans; the' second wearing a grey sweat shirt with the name Rockwell on it and blue jeans; and the third as wearing a black sweat shirt and jeans. Detective Rosario then proceeded to 172nd and Manor and observed an individual there wearing a white t-shirt and blue jeans. As Detective Rosario followed this individual, he radioed the undercover who confirmed that he was following the buyer whereupon Detective Rosario arrested him.[1] A search of his person revealed two slabs of crack cocaine. Further radio communication from the undercover informed Detective Rosario that the two sellers had proceeded to Elder. Detective Rosario then got into his car, drove to 172nd and Elder and detained the two defendants who were the only persbns present who fit the provided description. The undercover then confirmed that the defendants were the sellers and they were arrested.[2] Detective Rosario’s search of defendant Bain produced marijuana, United States currency and numerous empty ziploc bags.[3] His search of defendant Jones initially produced only United States currency. Then based on the undercover’s transmission during the confirmatory identification (see, n 2, supra) Detective Rosario loosened defendant Jones’ belt and ¡pulled his pants and underpants back. He observed a plastic bag containing what appeared to be cocaine stuffed between the cheeks of his buttocks. According to Detective Rosario’s testimony, since neither he nor any of the other members of the team had rubber gloves with them, he retightened defendant Jones’ belt and placed him in a police van after having searched it. When the van arrived at the *483 precinct, Detective Rosario removed defendant Jones and discovered the bag of cocaine on the seat.
Having received a radio transmission from the undercover officer, a known fellow officer and therefore presumably rehable, that he had just observed a narcotics sale involving three specifically described individuals, Detective Rosario had at least reasonable suspicion to detain and, after the undercover’s confirmatory identification, probable cause to arrest both defendants therefor. (People v Pared, 205 AD2d 462 [1st Dept 1994].) Thus, none of the items recovered from defendant Bain, nor the currency recovered from defendant Jones, incident to such arrest are subject to suppression; nor are the confirmatory identifications made by the undercover while the defendants were being legally detained. As to the cocaine observed by Detective Rosario after he opened defendant Jones’ pants on the street, the issue is less clear.
In the recent case of People v Mitchell (2 AD3d 145 [2003]), the Appellate Division, First Department, held that a strip search conducted on the street in full view of the public violated the Fourth Amendment. In Mitchell the defendant was arrested some two hours after making a narcotics sale to an undercover officer as part of a buy and bust operation. After the defendant was patted down, he was strip searched: he was ordered to bend over with his head inside the rear of a police van as his pants were pulled down to reveal the lower half of his body. The police then removed two glassines of heroin from between his buttocks cheeks. This was done during daylight hours in full view of the public. The Mitchell court held that in determining whether a search is reasonable under the Fourth Amendment, a court must consider “ ‘the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.’ ” (Id. at 147, quoting Bell v Wolfish, 441 US 520, 559 [1979].) Inasmuch as station house strip searches had been held justified incident to an arrest only upon reasonable suspicion that the arrestee was concealing a weapon or other contraband (Weber v Dell, 804 F2d 796, 802 [2d Cir 1986], cert denied 483 US 1020 [1987]; but cf., People v Martinez, 268 AD2d 266 [1st Dept 2000] [station house strip search incident to arrest reasonable based solely on defendant’s refusal to provide identification]) and there was no evidence that defendant Mitchell was concealing a weapon or other contraband, that Court had “no difficulty” in holding his *484 public strip search unreasonable. The glassines removed from his buttocks were therefore suppressed.[4]
Relying on Mitchell, defendant Jones argues that he was strip searched on the street and that the narcotics which Detective Rosario observed inside his pants during this search, later recovered in the van, must be suppressed upon that authority As the People noted, however, Mitchell is distinguishable. In Mitchell the arrest took place some two hours after the sale and there was no evidence that the defendant had secreted anything inside his pants. Here, the arrest took place moments after the sale and the undercover informed Detective Rosario that he had observed the defendant place the narcotics inside the back of his pants. Moreover, in Mitchell the defendant’s pants were sufficiently pulled down so that his private parts were visible to the public while here the defendant’s pants were merely loosened so that only Detective Rosario could see inside them. Finally, in Mitchell the narcotics were actually recovered from the defendant’s buttocks by a rubber-gloved hand. Here, they were only observed. Mitchell is therefore not controlling. The issue, therefore, remains: where the police have not only probable cause to arrest, but probable cause to believe that an arrestee has secreted contraband inside his pants, to what extent and under what circumstances may they search inside his pants on the street.
Although the court’s research had discovered no case in New York which has answered this question, it has been addressed in other jurisdictions. Thus, in United States v Bazy (1994 WL 539300, *3, 1994 US Dist LEXIS 14165, *7 [D Kan, Aug. 29, 1994], affd without op 82 F3d 427 [10th Cir 1996]) after the defendant was legally arrested on the street for drug possession and patted down, the police detected “something in his underwear.” They then placed him near a car, unbuckled his pants, and, stretching his clothes away from the defendant’s waist, and reaching into his underwear with a rubber-gloved hand, removed a block of cocaine from beneath his scrotum. In upholding this search, the Bazy court first noted that while a search incident to a legal arrest extends to a full search of the person (see, United States v Robinson, 414 US 218 [1973]), such authority does not permit a strip search. (Accord, People v More, 97 NY2d 209, 213 [2002].) The court also noted that a strip search, being an invasion of personal rights of the first *485 magnitude (Chapman v Nichols, 989 F2d 393, 395 [10th Cir 1993]), may only be justified on the street upon exigent circumstances. The court then found such circumstances existed based on the probable cause that the defendant had secreted drugs in his underwear; that if they were not immediately removed, they were subject to imminent destruction or disposal, and in fact posed a health risk to the defendant who was attempting surreptitiously to push them into his rectum. Moreover, the court noted that while the search was more than a pat down, it was still limited in scope: the defendant was not required to disrobe nor were his private parts visible to the public.[5] The search was therefore reasonable.
The great majority of jurisdictions which have confronted this issue have agreed with Bazy’s analysis. (Accord, United States v Moore, 36 F3d 127 [DC Cir 1994]; United States v Murray, 22 F3d 1185 [DC Cir 1994]; Superior Ct. v Jenkins, 2002 WL 819093, 2002 Conn Super LEXIS 1011 [Conn Super Ct, Mar. 26, 2002]; State v Smith, 118 NC App 106, 116, 454 SE2d 680, 687 [1995] [Walker, J., dissenting], revd on dissenting op 342 NC 407, 464 SE2d 45 [1995], cert denied 517 US 1189 [1996]; Commonwealth v McKeithan, 39 Va Cir 198 [1996].)
The only authority to the contrary this court’s research has disclosed is State v Walker (1998 WL 429121, 1998 Ohio App LEXIS 3466 [Ohio Ct App, July 28, 1998], appeal dismissed 84 Ohio St 3d 1433, 702 NE2d 1212 [1998]). In Walker on facts essentially identical to Bazy, the court found the circumstances insufficiently exigent to justify reaching into the defendant’s pants on the street. The Walker court therefore held the search unreasonable and suppressed.
Here, as in Bazy, Detective Rosario had probable cause to believe that defendant Jones had secreted narcotics inside his pants. Moreover, the concern that if not located and somehow safeguarded the drugs were subject to disposal was confirmed by the defendant’s apparent subsequent abandonment of them in the van. Finally, the defendant was not disrobed, his pants were only loosened and the drugs only observed and not then recovered.[6] Under all the circumstances and the authorities *486 cited above, this was not unreasonable. The motion to suppress these drugs is therefore denied.[7]
For the foregoing reasons, the motion of the defendants is in all respects denied. ■

. He was later identified as Derrick Sanders.

. The undercover actually confirmed that thé defendants were the sellers both before and after they were detained. Moreover, during the postdetention confirmation, the undercover informed Detective Rosario that he had observed the “guy with the black sweat shirt” (defendant Jones) put the drugs down the back of his pants.

. Detective Rosario also admitted looking into defendant Bain’s pants for contraband. There was no evidence that anything was observed or recovered as a consequence of this viewing.

. The narcotics Mitchell had sold to the undercover and the confirmatory-identification were not suppressed as they were not the fruit of the violation.

. The court characterized this search as only being “akin to strip searches.” (See generally, Kamins, New York Search & Seizure, at 350.)

. Thus, this court need not address the question of whether the actual removal of the drugs from the defendant’s underwear on the street would have been unreasonable.

. Assuming, arguendo, the opening and locking into defendant Jones’ pants was a violation of the Fourth Amendment, the only evidence that would he subject to suppression would be Detective Rosario’s observation of the drugs there but not the drugs themselves. (United States v Templeman, 965 F2d 617 [8th Cir 1992].) The undercover havin'g legally observed the drugs before defendant Jones secreted them inside his pants, the police had an independent source for their recovery. (Murray v United States, 487 US 533 [1988]; 5 LaFave, Search and Seizure § 11.4 [a].) Ip addition, the drugs were abandoned, an act independent of any asserted constitutional wrong.