■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MELIK BARNVILLE, Respondent. [819 NYS2d 234]—

Order, Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), entered February 23, 2005, which, after a *Mapp* hearing, granted defendant's motion and suppressed the physical evidence seized from defendant at the time of his arrest, unanimously reversed, on the law and the facts, the *motion* denied and the matter remanded for further proceedings.

The hearing testimony established that on April 19, 2001, at approximately 9:30 P.M., Detective Donnellan of Bronx Narcotics was manning an observation post located approximately 60 feet from 1220 College Avenue in the Bronx, a known illegal drug-trade location. At that time, Detective Donnellan was a 15-year veteran of the New York Police Department (NYPD) with specialized training in narcotics investigations and with several hundred narcotics arrests to his credit, approximately 90 of which took place at the College Avenue location. On the night in question, while in radio contact with his backup team, he observed a woman approach defendant, engage him in conversation, and hand him currency, at which point defendant moved toward the doorway of 1220 College Avenue, looked furtively to his left and right, and reached at or into the back area of his pants or underwear. He retrieved a small object, returned to the woman and handed the object to her. Defendant and the woman departed the scene in different directions, whereupon Donnellan radioed descriptions of them to his backup team. Subsequently, he was advised by radio that the woman had been apprehended and found in possession of crack cocaine, and that a man matching defendant's description had been apprehended.

Detective Rodriguez, also a trained and experienced narcotics investigator and a member of the backup team, received Donnellan's transmissions and was present at the apprehensions of both the woman and defendant. Upon apprehending defendant, Rodriguez searched his outer garments and pockets, recovering some currency from his pants pocket. Rodriguez and other officers then transported defendant to the 44th Precinct.

At approximately 9:50 P.M. at the Precinct, Detective Donnellan confirmed that the individuals in custody were the buyer and seller he had observed. He also advised the backup team that defendant should be searched for drugs and reiterated that the search should be focused on the rear area of his pants or, that failing, his buttocks. In Donnellan's experience, many narcotics suspects secreted drugs in or around their buttocks. Detective Rodriguez, by training and experience, was also aware of this tendency, and after receiving Donnellan's advice regarding defendant, he removed him to the back of the cells used for overnight detention and asked him to remove his clothing. Defendant did so, but rebelled when asked to turn around, squat and cough, alleging that such exposure of his buttocks to another man was a violation of his Muslim faith. Rodriguez insisted that defendant do so, and when he did, Rodriguez observed a cellophane bag between defendant's buttocks. When Rodriguez asked him to pull the bag out, defendant agreed to do so. However, he instead pushed the bag into his rectum and stood up straight. He then began to resist Rodriguez's efforts to position him and Rodriguez called for assistance. Donnellan, another detective and two supervisors responded. Defendant was positioned facing a wall, with only a plastic string from the cellophane bag visible. When Donnellan put on gloves and tried to remove the string (and bag) from defendant's rectum, the string broke. Afraid that defendant's health would be endangered, if the bag contained drugs and broke open, one of the supervisors directed that defendant be taken to the hospital for removal of the bag, and defendant was dressed and taken by ambulance to Lincoln Hospital. While en route, and later at the hospital, defendant appeared to be straining to discharge the bag. When the medical staff at the hospital pulled down defendant's underwear, he had already discharged the bag, which apparently contained small blocks of crack cocaine, not marijuana as defendant had admitted en route to the hospital. Detective Rodriguez recovered the evidence and transported it back to the Precinct.

The motion court erred in suppressing the drugs seized from defendant as the product of an illegal visual body cavity search incident to arrest. In our view, given the predicate circumstances—the trained, experienced officer's observation of defendant, at a notorious drug location, retrieving an item from his buttocks area and exchanging it for money from a person found in possession of drugs minutes later, the fruitless search of defendant's outer garments, and the knowledge that drug dealers often store drugs within their buttocks or rectum—there was sufficient evidence to support not only probable cause to ar-

rest for a drug sale, but an objective, particularized, reasonable belief that defendant was secreting contraband in the area of his buttocks. Such circumstances have been found sufficient justification for a visual body cavity search to recover evidence (*see e.g. Commonwealth v McKeithan*, 39 Va Cir 198 [1996] [where defendant was observed distributing a white rock-like substance and placing his supply of drugs in the crotch of his pants, then shifting it to the rear of his pants, police properly searched and recovered contraband from between his buttocks at the scene of the crime]; *People v Jones*, 3 Misc 3d 481 [2004] [suppression denied where drugs recovered as the result of a visual cavity search based upon undercover's radio transmission that he observed defendant placing drugs in the back of his pants during a drug transaction]).

Furthermore, in *People v Mitchell* (2 AD3d 145 [2003]), where this Court suppressed evidence seized as the result of a strip/visual body cavity search incident to arrest conducted on a public street, we relied upon the test espoused in *Bell v Wolfish* (441 US 520, 559 [1979]), which requires that a court, in determining the reasonableness of a search under the Fourth Amendment, consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Reviewed under these criteria, the search at issue passes constitutional muster. The strip/visual body cavity search was conducted without physical contact between officer and defendant, the officer merely instructing defendant how to proceed and observing the results. The initiation of the search was justified as based upon the predicate circumstances noted above, which reflected a restrained, reasonable approach on the part of the officers in reaching the determination that a visual cavity search was warranted. Finally, the search was conducted in a reasonably private setting in the station house. Contrary to the findings of the motion court, there was no evidence that anyone other than Detective Rodriguez was present at or viewed the search. Only when defendant refused to cooperate further (by pushing the cellophane bag into his rectum), and began to behave in a disruptive manner, did other officers enter the room in response to Rodriguez's call for assistance.

We have considered defendant's contention that the People's CPL 450.50 statement was jurisdictionally defective, and find it to be without merit. Concur—Andrias, J.P., Saxe, Friedman, Williams and Malone, JJ.