[No. A120331. First Dist., Div. Five. Apr. 9, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY CRAIG SMITH, Defendant and Appellant.

## COUNSEL

Diana M. Teran for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DONDERO, J.**[*]—Defendant Anthony Craig Smith (Smith) appeals from a felony narcotics conviction, asserting as error the trial court's denial of his motion to suppress evidence unreasonably obtained during a "public strip search." (Pen. Code, § 1538.5.) We affirm, concluding that the police officer's search, effected by pulling back the waistband of Smith's underwear and visually inspecting his crotch area, did not constitute a public strip search and met constitutional standards, in light of Smith's parole status and reduced expectation of privacy.

### FACTUAL BACKGROUND

On June 23, 2006, at around 11:30 a.m., Officer Robert Greenberg (Officer Greenberg) and Corporal Brian Estudillo (Corporal Estudillo) of the Vallejo Police Department were on patrol in the area around the Vallejo Inn. Officer Greenberg knew, from prior service calls and his law enforcement experience in the city, that this was a high-crime area. He testified: "There's a lot of criminal activity that goes on there, such as people possessing drugs, selling drugs, manufacturing drugs, people possessing stolen property, . . . sexual assaults . . . ." When he and Corporal Estudillo arrived at the Vallejo Inn,

---

[*]Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

they observed a man trying to open a window of a hotel room on the ground floor to gain access to the room. They exited their patrol cars, intending to approach the suspect and, as they did so, they noticed Smith sitting in the driver's seat of a car parked directly in front of the same hotel room. Officer Greenberg decided to investigate the situation further. While Corporal Estudillo contacted the suspect at the hotel window, Officer Greenberg approached Smith, who was exiting his vehicle.

Officer Greenberg asked Smith what he was doing at the hotel, whether he was on probation or parole, and whether he could search him. Smith said he was on parole, "go ahead," or "something to that effect." At some point during the incident, Officer Greenberg confirmed through dispatch that Smith was on parole from a conviction for possession of cocaine base for sale. In accordance with his standard safety practice when searching probationers and parolees, Officer Greenberg handcuffed Smith. Officer Greenberg conducted a patdown search of Smith and then a thorough search of his car, but did not discover any contraband.

Because of the high incidence of drug activity in the area and Smith's history of selling narcotics, as well as his own feeling that Smith had contraband in his underwear, Officer Greenberg told Smith that he was "gonna check his pants and see if he had anything in there." At that point, Smith became uncooperative, so Corporal Estudillo and another police officer placed him in control holds. Officer Greenberg performed the search inside the crook of the open back door of a patrol car with the other two officers standing around Smith, to protect his privacy. The search took place in the back of the hotel parking lot, which did not face the street, but rather, a fenced-in area. Officer Greenberg could not recall if other people were in the area or if other cars were parked in the lot. He testified, however, that the search was "not on Sonoma Boulevard where cars are consistently driving through the back parking lot" and that "[at] that time of morning, there aren't that many people around most of the time. There [are] not a lot of cars there."

Officer Greenberg removed Smith's belt, unbuttoned and unzipped Smith's pants and pulled them down "a foot or so," then pulled the elastic waistband of Smith's underwear "out away from his body" and saw a large bag the size of a baseball "sitting right on top of his penis." Officer Greenberg retrieved the bag, which contained 12 smaller baggies of heroin, cocaine, and methamphetamine. The officers placed Smith in a patrol car and transported him to the police station, where they conducted a more thorough strip search.

## PROCEDURAL HISTORY

On January 23, 2007, the District Attorney of Solano County (the People) filed an information charging Smith with six felony counts, including transportation of heroin, cocaine base, and methamphetamine (Health & Saf. Code, §§ 11352, subd. (a), 11379, subd. (a)) and possession of these substances for sale (Health & Saf. Code, §§ 11351, 11351.5, 11378). For purposes of sentence enhancement, the information also alleged five prior felony convictions, three of which were narcotics convictions, and four prior prison terms. (See Health & Saf. Code, § 11370.2, subds. (a), (c); Pen. Code, § 667.5, subd. (b).) Smith pleaded not guilty to the charges and denied the enhancement allegations.

Shortly thereafter, Smith filed a motion to suppress the evidence obtained during Officer Greenberg's search (Pen. Code, § 1538.5). After opposition from the People and an evidentiary hearing, the trial court denied the motion. The trial court concluded that although the People had not proven that Smith was subject to a parole search condition, Smith had essentially acknowledged in his response to Officer Greenberg's request to search him that he was subject to this condition. The trial court further concluded that the search of Smith's underwear was not arbitrary or capricious or for the purpose of harassment, noting that "[t]here was suspicious activity" and that, under the circumstances, the officers would have been derelict in their duties had they not investigated Smith. The trial court rejected Smith's contention that this constituted a public strip search and concluded that Officer Greenberg's conduct was reasonable under the circumstances.

In November 2007, after the People amended the information to add allegations of two additional prior narcotics convictions, Smith changed his plea to "no contest" as to all of the charges against him and admitted the prior convictions and prison terms alleged. On November 20, 2007, the trial court sentenced him to 10 years in state prison, imposing the four-year midterm on the third count (transportation of cocaine base) and consecutive three-year terms as sentence enhancements for two of the prior narcotic convictions. The trial court stayed the remaining convictions and enhancements. Smith filed a timely appeal from his conviction, asserting as error the trial court's denial of his motion to suppress.

## DISCUSSION

A criminal defendant may move under Penal Code section 1538.5 to suppress evidence obtained as a result of an unreasonable search or seizure. (See Pen. Code, § 1538.5, subd. (a).) When a felony defendant brings such a motion for the first time upon the filing of the information, the trial court sits

as a finder of fact with " 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence[,] and draw factual inferences.' "[1] (*In re Arturo D.* (2002) 27 Cal.4th 60, 77 [115 Cal.Rptr.2d 581, 38 P.3d 433].) On appeal, we review the trial court's factual findings for substantial evidence and presume their correctness. (*Ibid.*; *People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961] (*Leyba*), superseded by statute on other grounds, as stated in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223–1224 [266 Cal.Rptr. 473].) We review questions of law independently, however, including the trial court's application of the law to the facts. (*Leyba, supra,* 29 Cal.3d at pp. 596–597.) In California, the reasonableness of a police search is a question of law, which we determine under the Fourth Amendment. (*Leyba,* at pp. 596–597; see *In re Tyrell J.* (1994) 8 Cal.4th 68, 76 [32 Cal.Rptr.2d 33, 876 P.2d 519], overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 130 [51 Cal.Rptr.3d 430, 146 P.3d 965]; Cal. Const., art. I, § 28, subd. (d) [prohibiting trial courts from excluding evidence at trial as a remedy for unreasonable search and seizure unless required by the federal Constitution].)

■ A warrantless search is unreasonable per se unless the People justify the search under a recognized exception to the warrant requirement. (*In re Tyrell J., supra,* 8 Cal.4th at pp. 76, 79.) A search pursuant to a valid parole search condition constitutes such an exception. (*United States v. Knights* (2001) 534 U.S. 112, 117–118, 121–122 [151 L.Ed.2d 497, 122 S.Ct. 587]; *Griffin v. Wisconsin* (1987) 483 U.S. 868, 875 [97 L.Ed.2d 709, 107 S.Ct. 3164].) Indeed, a police officer may conduct a parole search without a reasonable suspicion of wrongdoing as long as he is aware that the suspect is subject to a search condition. (*Samson v. California* (2006) 547 U.S. 843, 852 [165 L.Ed.2d 250, 126 S.Ct. 2193] (*Samson*); *People v. Reyes* (1998) 19 Cal.4th 743, 751 [80 Cal.Rptr.2d 734, 968 P.2d 445] (*Reyes*).) On appeal, Smith concedes that Officer Greenberg knew he was on parole and therefore was authorized to search him without a reasonable suspicion. He contends, however, that the "search of his underwear in a public place was unreasonable . . . because it was arbitrary, capricious, and/or harassing."

■ In determining whether a search is reasonable, we consider the totality of the circumstances known to the officer and balance the intrusion of the search upon the suspect's privacy with the need for such intrusion to promote legitimate government interests. (*Samson, supra,* 547 U.S. at p. 848.) Here, this analysis turns on Smith's status as a parolee. Parolees do not enjoy " ' "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special . . . restrictions." ' " (*Reyes, supra,* 19 Cal.4th at pp. 747–748, citing *Griffin v.*

---

[1] A different standard governs a trial court's consideration of a renewed motion to suppress that was filed initially at the preliminary hearing. (See Pen. Code, § 1538.5, subds. (f), (i).)

*Wisconsin, supra,* 483 U.S. at p. 874.) In California, a parolee remains in the legal custody of the Department of Corrections and Rehabilitation through the balance of his sentence and must comply with all of the terms and conditions of parole, including a search condition requiring him to submit to a search, with or without cause, at any time. (*Samson, supra,* 547 U.S. at pp. 851–852; see Pen. Code, § 3067.)[2] He is on notice that his activities are being routinely and closely monitored, and indeed, that his own conduct gave rise to the compelling need for such supervision. (*Reyes, supra,* 19 Cal.4th at pp. 752–753.) His expectation of privacy, therefore, is "severely diminished." (*Samson, supra,* 547 U.S. at p. 852; *Reyes, supra,* 19 Cal.4th at pp. 751, 753 [discussing the "hierarchy of privacy interests"].)

The state, on the other hand, has an " ' "overwhelming interest" ' " in the close supervision of parolees to prevent recidivism and promote their reintegration into society. (*Samson, supra,* 547 U.S. at pp. 853–854 [citing 2006 statistics reflecting that California had the highest recidivism rate in the nation].) The search condition is the mechanism by which the state monitors the efficacy of its efforts in this regard, deters the commission of crimes, and protects the public. (*Reyes, supra,* 19 Cal.4th at pp. 752–753.) Indeed, the United States Supreme Court has acknowledged that parolees are more likely to commit crimes than other citizens and have a greater incentive to conceal their criminal activities and dispose of incriminating evidence. (See *Samson, supra,* 547 U.S. at pp. 849, 854–855 [noting the "grave safety concerns that attend recidivism"].)

In light of the state's substantial interest in this regard and the parolee's minimal expectation of privacy, an officer may conduct a parole search "for a proper purpose" without a particularized suspicion. (*Reyes, supra,* 19 Cal.4th at p. 754; see *United States v. Follette* (S.D.N.Y. 1968) 282 F.Supp. 10, 13 ["Any search by a parole officer in good faith to determine whether a paroled prisoner is complying with the conditions of his release would in my opinion be reasonable."], cited with approval in *Reyes, supra,* 19 Cal.4th at p. 754.) A parolee's status does not deprive him altogether of constitutional protection, however, or leave his privacy and dignity to the unbridled discretion of law enforcement officers. (*Reyes, supra,* 19 Cal.4th at pp. 753–754; *Samson, supra,* 547 U.S. at p. 856; *In re Jaime P., supra,* 40 Cal.4th at p. 136 ["persons on probation or parole who are subject to a search condition nonetheless retain some residual expectation of privacy"].) As Smith correctly contends, a parole search is constitutionally

---

[2] In California, inmates who are eligible for release on parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." (Pen. Code, § 3067, subd. (a).) Inmates who do not do so lose worktime credit earned on a day-for-day basis and are not released until they either agree to the search condition or have no worktime credit, whichever occurs first. (See *id.,* subd. (b).)

unreasonable if it is arbitrary, capricious, or harassing. (*Samson, supra,* 547 U.S. at p. 856; *Reyes, supra,* 19 Cal.4th at pp. 752, 753–754 [adopting the rationale of *In re Tyrell J., supra,* 8 Cal.4th 68 for involuntary search conditions].)

Whether a search is arbitrary, capricious, or harassing turns on its purpose. (See *In re Tyrell J., supra,* 8 Cal.4th at p. 87 [search may not be conducted " 'for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes[,]' . . . '. . . for harassment or . . . for arbitrary or capricious reasons' " (citation omitted)]; *In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1004 [6 Cal.Rptr.2d 214] [search is arbitrary and capricious when the officer's motivation is unrelated to rehabilitative, reformative, or legitimate law enforcement purposes, as when it is driven by personal animosity toward the parolee].) There is no evidence that Officer Greenberg acted with an improper motive, and the People offered substantial evidence to the contrary, establishing that he acted with a legitimate law enforcement purpose: to determine whether Smith was engaged in criminal activity at the hotel. (See *People v. Bremmer* (1973) 30 Cal.App.3d 1058, 1065 [106 Cal.Rptr. 797] (*Bremmer*) ["Absent obvious harassment a probation officer's search is directed toward the legitimate objective of a probationer's reformation and rehabilitation and hence [is] reasonable . . . ."][3]; *In re Tyrell J., supra,* 8 Cal.4th at p. 87.)

Indeed, Smith does not take issue with Officer Greenberg's motives. Although Smith frames his argument using the "arbitrary, capricious, or harassing" terminology in *Reyes,* his assertion of unreasonableness turns on the scope of the search and the manner in which it was conducted. The scope and manner of a parole search may also render it unreasonable. (See *People v. Medina* (2007) 158 Cal.App.4th 1571, 1577 [70 Cal.Rptr.3d 413] ["as long as the search is not undertaken for harassment or for arbitrary or capricious reasons *or in an unreasonable manner*" (italics added)]; *In re Anthony S., supra,* 4 Cal.App.4th at p. 1004 [search condition does not justify a warrantless search that is outside the scope of consent, conducted in an unreasonable manner, or for an arbitrary, capricious, or harassing purpose].) A search may be unreasonable if it is " 'made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer.' " (*Reyes, supra,* 19 Cal.4th at pp. 753–754.)

---

[3] In *Bremmer,* the court recognized the reasonableness of a *probation officer's* search for this purpose, but for searches by other peace officers, the court required a "sufficient relationship . . . between the probationer's present activity and his past misconduct" indicating a resumption of such misconduct. (*Bremmer, supra,* 30 Cal.App.3d at pp. 1065–1066.) The *Reyes* court later rejected a reasonable suspicion requirement for parole searches generally, effectively extending the standard *Bremmer* applied to probation officers to all peace officers. (See *Reyes, supra,* 19 Cal.4th at pp. 753–754.)

In determining whether a particular search is reasonable, we apply a balancing test in which we consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place where it is done. (See *Bell v. Wolfish* (1979) 441 U.S. 520, 559 [60 L.Ed.2d 447, 99 S.Ct. 1861].) Smith claims Officer Greenberg recovered illegal narcotics during a "strip search" that was "unreasonable under the Fourth Amendment . . . because [it] was conducted in public without reasonable cause or exigent circumstances." We agree with the trial court's conclusion that Smith was not subjected to a public strip search. The evidence shows that Officer Greenberg lowered Smith's pants "a foot or so" and pulled back the elastic waistband of his underwear, permitting a visual inspection of his crotch area. Smith's belt was the only item of clothing removed, his private parts were not exposed, and there is no evidence that Officer Greenberg touched Smith's private area—he simply retrieved the bag of drugs.[4] The intrusion was limited to that necessary to determine whether Smith was concealing narcotics and did not constitute a broad invasion of his privacy and dignity rights. We deem the intrusiveness of the search even less significant in light of our conclusion that Smith had a sharply diminished expectation of privacy as a parolee. (See also *Bremmer, supra*, 30 Cal.App.3d at pp. 1063–1067 [search condition may expand the scope of a search].)

Moreover, although Officer Greenberg's search took place in public in broad daylight, it was conducted in the back of a hotel parking lot in an area that did not face the street, was fenced off on at least one side, and was not heavily frequented. Before the search, the officers also moved Smith to a less exposed location, inside the crook between the open rear door of the patrol car and the body of the car, and stood around him to obstruct visibility. There is no evidence that any civilian in the vicinity observed the search or that a passerby could have caught a glimpse of anything more revealing than Smith's underwear, assuming that was visible.

Finally, as the trial court concluded, the justification for Officer Greenberg's search weighs in favor of its reasonableness. As explained above, the state has a substantial interest in preventing recidivism by parolees, promoting their reintegration into society, and protecting the public from their relapse into crime, and these interests may warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. (See *Samson, supra*, 547 U.S. at p. 853.) Moreover, the circumstances justified the extent of the search. Given the high level of illegal drug activity in the area, Smith's

---

[4] Indeed, in this sense, the search was less intrusive than a patdown. (See *Terry v. Ohio* (1968) 392 U.S. 1, 17, fn. 13 [20 L.Ed.2d 889, 88 S.Ct. 1868] [" '[T]he officer must feel with sensitive fingers every portion of the [defendant's] body. A thorough search must be made of the [defendant's] arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet.' "].)

prior narcotics conviction, the failure of the first two searches to disclose any illegal substances, and Officer Greenberg's gut feeling that Smith was concealing contraband, it was reasonable to perform a more thorough search of Smith's person.[5] (See *Jenkins v. State* (Fla. 2008) 978 So.2d 116, 127–128 & fn. 12 (*Jenkins*); *U.S. v. Rodney* (D.C. Cir. 1992) 294 U.S. App.D.C. 9 [956 F.2d 295, 297–298], and cases cited [recognizing as a matter of law that dealers frequently hide drugs near their genitals and citing to detective's testimony that 75 percent of drug contraband is recovered from the suspect's crotch area].)

Besides the California authorities discussed above, we are persuaded by authority directly on point from other jurisdictions discussing particular searches virtually identical to the one at issue here. The Florida Supreme Court recently upheld a search in which the officer pulled the top of a suspect's boxer shorts away from his waist and observed a sandwich bag of crack cocaine lodged in his buttocks.[6] (See *Jenkins, supra*, 978 So.2d 116.) The court concluded that, under the facts, the suspect had been subjected not to a strip search, but to a less intrusive " 'reach-in' " search, as he remained clothed and his private parts were not visible to onlookers. (*Id.* at p. 127.) As in this case, the police officer in *Jenkins* first conducted a patdown and searched the suspect's vehicle but found no contraband. (*Id.* at p. 118.) Emphasizing the officer's preliminary efforts in this regard, the court deemed his "very limited intrusion into [the suspect's] clothing" justified. (*Id.* at p. 128.) In so holding, the court recognized that "[i]t is not unknown or in any way unusual that drug dealers frequently hide contraband in their undergarments in an attempt to evade discovery of the unlawful substances during routine searches." (*Ibid.*; see *id.* at p. 128, fn. 12 [" 'common knowledge that controlled substances often are concealed on the person of users and dealers alike' "].)

Another case deciding this issue is *U.S. v. Williams* (8th Cir. 2007) 477 F.3d 974 (*Williams*). In *Williams*, the police, who had a search warrant for the person and residence of Williams, conducted the search of his person in a parking lot adjacent to the police station. The officer, wearing a latex glove, opened the suspect's pants, reached inside the underwear, and retrieved a large amount of narcotics near his genitals. (*Id.* at p. 975.) Although this "reach-in" took place in a public parking lot, there is no evidence it was viewable by passersby and it did not display the suspect's genitals. (*Id.* at

---

[5] Smith claims it was constitutionally improper for Officer Greenberg to rely on his gut feeling in this regard. Although this claim is true when the Fourth Amendment requires a particularized suspicion of criminal activity, it has no application here. (See *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; *Reyes, supra*, 19 Cal.4th at pp. 752, 753–754 [parole search without reasonable suspicion may be reasonable].)

[6] There is no indication that the suspect in *Jenkins* was a parolee or probationer subject to a search condition. (See *Jenkins, supra*, 978 So.2d 116.)

p. 977.) Hence, the search was not a strip search. Contrasting cases where a suspect is forced to expose private areas in a public place, the federal court held the "reach-in" permissible since the police took "steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy." (*Ibid.*)

The final case of note is *U.S. v. Ashley* (D.C. Cir. 1994) 308 U.S. App.D.C. 381 [37 F.3d 678]. In that case, the police approached Ashley as he was exiting a city bus, and, at their request, he consented to a patdown for drugs. The officers felt a large rock-like object in his groin area and asked him to open his pants on the public street, but not drop them. Noticing that Ashley was wearing a second pair of pants underneath, the officer opened this pair as well and removed a package of drugs protruding from his underpants. The officer testified that he had retrieved narcotics 10 to 15 times from the crotch areas of suspects before this particular incident. (37 F.3d at p. 679.) The appellate court found that the retrieval of contraband as described did not exceed the consented patdown, and the evidence presented did not affront Ashley's privacy interests. (*Id.* at p. 682.)

 These cases demonstrate that the courts are particularly likely to deem a "reach-in" search tolerable when the police take proper steps to diminish the invasion of a suspect's privacy during a search in a public area. As one court noted, the police officers had "struck the appropriate balance between 'the need for the particular search' and 'the invasion of personal rights' " by taking the suspect to the side of the building, "away from the street and out of public view," not requiring him to remove any clothing, and simply pulling his pants and underwear away from his body to recover the drugs. (*State v. Jenkins* (2004) 82 Conn.App. 111, 125–126 [842 A.2d 1148].) Our case presents a like occurrence.

The authority on which Smith relies does not call for a different result, as both the physical intrusion and the public exposure in the cases he cites are far more extensive than the search at issue here. In *Campbell v. Miller* (7th Cir. 2007) 499 F.3d 711, 715, for example, officers performed an anal cavity search of the suspect in a private backyard, with his bare buttocks exposed, while the neighbors looked on. Likewise, in *People v. Mitchell* (N.Y.App.Div. 2003) 2 A.D.3d 145 [768 N.Y.S.2d 204, 206], the officers took the suspect to the rear of the police van, which was parked on the street in front of a church, and ordered him to bend over with his head inside the back of the van, the lower half of his torso outside the van, and his feet on the street. They then pulled down his pants and searched his buttocks in front of the church. (See also *Bell v. Wolfish, supra*, 441 U.S. at pp. 558–559 [policy to conduct routine strip searches of inmates after each visitor contact, including a visual inspection of body cavities]; *Logan v. Shealy* (4th Cir. 1981) 660 F.2d 1007

[blanket policy to strip-search all detainees regardless of alleged criminal conduct].) The "reach-in" conducted by Officer Greenberg was not a public strip search that may be justified only in "the most compelling circumstances," as Smith suggests.[7]

■ We conclude, accordingly, that Officer Greenberg's search of Smith's underwear satisfied the Fourth Amendment and that the trial court properly denied Smith's motion to suppress the evidence obtained during that search.[8]

## DISPOSITION

The conviction is affirmed.

Jones, P. J., and Simons, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 15, 2009, S173058. George, C. J., did not participate therein.

---

[7] We note that when the officers eventually performed a thorough strip search of Smith, they did so in a cell at the police station.

[8] Smith asserts for the first time on appeal that the search was unreasonable because it violated Penal Code section 4030. Smith has waived this argument by failing to raise it in the trial court. (See *Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124, 1131 [19 Cal.Rptr.3d 381]; *Baugh v. Garl* (2006) 137 Cal.App.4th 737, 746 [40 Cal.Rptr.3d 539].) In any case, section 4030, which governs strip searches of minors and prearraignment detainees arrested for infraction and misdemeanor offenses, is inapplicable and irrelevant to the constitutional issues we consider. Such "state restrictions do not alter the Fourth Amendment's protections." (*Virginia v. Moore* (2008) 553 U.S. 164, ___ [170 L.Ed.2d 559, 128 S.Ct. 1598, 1607].)