Filed 5/25/21  P. v. Guidry CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOHN E. GUIDRY, <br><br> Defendant and Appellant. | B301133 <br><br> (Los Angeles County Super. Ct. Nos. VA150626, BA471541) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

A jury convicted John E. Guidry of grand theft, and the trial court sentenced him to six years in prison. Guidry contends the trial court erroneously denied his *Pitchess*[1] motion and motion to exclude evidence, and violated his right against self-incrimination. We affirm.

## BACKGROUND

On May 2, 2019, Guidry used a hammer to break into a cash register at a Walmart. He removed cash from the register and placed it in his pocket, put the hammer in his front waistband, and left the store. He was detained and searched outside the store by Los Angeles County Sheriff's deputies, who retrieved $2,230 from his buttocks area, where it had been secured within transparent leggings.

Before trial, Guidry moved for production of confidential personnel files of the deputies who arrested him. The court denied the motion for noncompliance with notice requirements.

Guidry also moved to suppress evidence of the money discovered in his buttocks area, arguing the deputies conducted an unreasonable public strip search to find the money. After hearing testimony from deputies, the trial court denied the motion on the ground that the search was reasonable: The money was visible underneath transparent leggings once deputies pulled back Guidry's waistband.

At trial Erik Tejada, a Walmart employee, testified that he followed Guidry through the store and saw him break into a cash register and leave. The incident was captured on a surveillance video that was too pixilated to identify Guidry's face, but Tejada,

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

who admittedly lost sight of him for several seconds while following him, identified Guidry as the culprit.

Guidry represented himself, presenting a defense of mistaken identity. When cross-examining Tejada, Guidry twice referred to the person Tejada had followed as himself. When Tejada testified, "I was following you," Guidry stated, "You were following me, but you lost sight of the person you said." After Tejada admitted that even though he followed Guidry closely, he did not appear in any security footage, Guidry stated, "Even though you are following me at a rapid pace . . . ."

During closing argument, the prosecutor stated, "The kicker in this case is that the defendant, when he was questioning the witnesses, kept referring, well, when you saw me, when you followed me . . . [¶] . . . [¶] He continually referred to this individual as, 'me' himself. If it truly wasn't him, he would have— . . . [¶] . . . – been able to keep that distance from himself throughout the entire trial, but he wasn't because he knows it's him."

The jury convicted Guidry of grand theft. (Pen. Code, § 487, subd. (a).)[2]

## DISCUSSION

### A. *Pitchess* Motion

Guidry mailed his *Pitchess* motion to the Sheriff's Department's custodian of records on June 28, 2019, and a hearing was scheduled for July 22, 2019. He filed no proof of service until the day of the hearing. Guidry's declaration in support of the motion made no discussion of the charged offense

---

[2] All undesignated statutory references will be to the Penal Code.

and proposed no defense, merely alleging that deputies used excessive force when they arrested him.  The motion provided no copy of the police report.  The Sheriff's Department opposed the motion expressly on the grounds of inadequate notice and service, and additionally argued that the motion failed on the merits.  The department declined to appear at the hearing.

Guidry argues the court erred in denying his *Pitchess* motion on notice grounds because he complied with notice requirements, which in any event the Sheriff's Department waived.  We disagree.

Confidential peace officer personnel records are discoverable upon a written motion establishing good cause.  (§§ 832.5, 832.7; Evid. Code, § 1043, subds. (a) & (b); see *City of Tulare v. Superior Court* (2008) 169 Cal.App.4th 373, 382-383.)  Notice of the motion to the officer's custodian of records must be "served and filed at least 10 days before the hearing. . . .  Proof of service of the notice shall be filed no later than five court days before the hearing."  (Evid. Code, § 1043, subd. (a)(2).)  "No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of the hearing by the governmental agency identified as having the records."  (Evid. Code, § 1043, subd. (d).)

To show good cause, a *Pitchess* motion must be accompanied by a declaration proposing a defense to the pending charges and a factually specific articulation how the discovery sought may lead to relevant evidence.  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1025; see *People v. Salcido* (2008) 44 Cal.4th 93, 146 [a "logical connection" must be made between the

4

charges and defense].)  The motion must also be accompanied by a copy of the police report.  (Evid. Code, § 1046.)

We review the denial of a *Pitchess* motion for an abuse of discretion, i.e., by determining if the denial exceeded the bounds of reason under all of the circumstances or was arbitrary or capricious.  (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992.)

Here, Guidry timely mailed his *Pitchess* motion to the Sheriff's Department's custodian of records more than 10 court days before the hearing, but filed no proof of service until the day of the hearing.  Because no proof of service was filed five days before the hearing, Guidry failed to fully comply with the notice provisions of Evidence Code section 1043, and the court acted within its discretion in denying the motion.  Although the court did not expressly rely on the untimely proof of service to deny the motion, we review a trial court's ruling, not its rationale.  (*People v. Smithey* (1999) 20 Cal.4th 936, 972.)

Moreover, Guidry's declaration in support of the motion made no discussion of the charged offense and proposed no defense, merely alleging that deputies used excessive force when they arrested him.  And he failed to provide a police report, as required by Evidence Code section 1046.  These failures separately justified denial of the motion.

Guidry argues that his delay in filing a proof of service caused the Sheriff's Department no prejudice.  We agree, but mere lack of prejudice does not mean a trial court abuses its discretion when it denies a motion that fails to comply with statutory requirements.

Guidry argues that the Sheriff's Department waived any procedural argument by presenting an alternative argument on

5

the merits in its opposition.  We disagree, as the Sheriff's Department expressly stated in its opposition that it stood on the service requirements.

## B.     Motion to Suppress Evidence

Before trial, Guidry moved to suppress the cash found on his person, arguing the public "strip search" by which the money was discovered violated his Fourth Amendment rights.

At the hearing on the motion, Sheriff's Deputies testified that while in the Walmart parking lot, Tejada identified Guidry as the suspect who had been reported to them as having broken into several cash registers and taken money.  He wore "big and loose" pants that were falling down after deputies removed an electrical cord Guidry used for a belt.  The all-male deputies surrounded Guidry with four to six patrol cars, away from the public, performed a patdown search for weapons, finding a concealed hammer in his waistband, then pulled back the waistband and discovered that "[s]ome bills were on his butt cheeks and some bills were between his buttocks and some [transparent] spiderweb leggings" or "fishnet stockings."  The deputies never touched Guidry's buttocks, and denied that this constituted a strip search.

The trial court found the money was "secured by these either fishnet stockings or these web stockings or something which caused the money to be secure at or near the buttocks area," and could be seen when deputies pulled open Guidry's waistband.  The court found it was "not a strip search where they're looking in the body cavity attempting to locate something which is secreted inside the body," and the

6

deputies were "really not searching at all," but "retrieving what [was] seen and once the pants are loosened." The court found the search to be reasonable, and denied Guidry's motion to suppress.

Guidry argues the court erred in denying his motion to suppress evidence because Sheriff's Deputies discovered the evidence only after an unreasonable public strip search. We disagree.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. [Citations.] Because the 'balance between the public interest and the individual's right to personal security,' [citation], tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity ' "may be afoot." ' (*United States v. Arvizu* (2002) 534 U.S. 266, 273 [122 S.Ct. 744, 151 L.Ed.2d 740]; see *People v. Dolly* (2007) 40 Cal.4th 458, 463 ["An investigatory detention of an individual in a vehicle is permissible under the Fourth Amendment if supported by reasonable suspicion that the individual has violated the law"].)

A search conducted upon a reasonable suspicion of criminal activity must be reasonable in the execution. (*Bell v. Wolfish* (1979) 441 U.S. 520, 559.) "The test for reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." (*Ibid*.) Relevant factors include the justification for the search, the place and manner in

7

which it is conducted, and the scope of the particular intrusion. (*Ibid*.)

In *People v. Smith* (2009) 172 Cal.App.4th 1354, police conducted a patdown search inside the open back door of a patrol car with two other officers standing around the suspect. After that search yielded negative results, the officers opened the suspect's pants, lowered them about a foot, and "pulled the elastic waistband of [the suspect's] underwear 'out away from his body' and saw a large bag the size of a baseball 'sitting right on top of his penis.'" (*Id*. at p. 1358.) The court concluded that the search did not constitute a public strip search nor violate the Fourth Amendment. (*Id*. at pp. 1357, 1363-1364.)

When analyzing a ruling on a suppression motion, we "'"defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found."'" (*People v. Tully* (2012) 54 Cal.4th 952, 979.) "'As the finder of fact . . . the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable.'" (*Ibid*.)

Here, deputies removed none of Guidry's clothing other than a wire he used as a belt. They did not lower his pants, but merely pulled open the waistband. The search was conducted by male deputies surrounded by four to six patrol cars, away from the public, and without force, and never included the direct touching of Guidry's buttocks. Under these circumstances, we conclude the search involved no broad invasion of privacy, and was reasonable.

8

## C.  Prosecutorial Misconduct

As we noted above, during closing argument the prosecutor alluded to Guidry admitting during his cross-examination of Tejada that he was the suspect Tejada had followed through Walmart.

Prior to opening statements, the court instructed the jury that attorney and party "remarks are not evidence," that "questions are not evidence," and that "[o]nly the witnesses' answers are evidence.  The attorneys' questions are significant only if they help you understand the witnesses' answers.  [¶]  Do not assume that something is true just because one of the attorneys or parties asked a question that suggested it is true."

Prior to closing arguments, the court instructed the jury that "[n]othing that the attorneys say is evidence.  The defendant is acting as his own attorney, therefore, any statement made by the defendant in court is not evidence. . . .  Their questions are not evidence.  Only the witnesses' answers are evidence.  The attorneys' questions are significant only if they help you to understand the witnesses' answers.  Do not assume that something is true just because one of the attorneys asked a question that suggested it was true."

Guidry argues the prosecutor's remarks improperly used Guidry's questions during the trial as evidence of guilt. We disagree.

The jury was instructed to consider only the evidence, and further instructed that attorney or party comments or questions were not evidence.  A jury is presumed to follow instructions.  (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

9

Guidry argues that the trial court's denial of his objections to the prosecutor's statements constituted an implied instruction to the jury that the prosecution *could* rely on Guidry's trial questions as evidence of guilt. We disagree. Denial of an objection to a statement indicates only that the statement is nonobjectionable, which can be for any of a number of reasons. It implies nothing about the merits of the statement, much less contradicts express instructions.

In any event, no use by the jury of Guidry's purported admissions could have prejudiced him. When cross-examining Tejada, Guidry stated only that Tejada had followed him in Walmart, but the jury already knew this from Tejada's testimony. Guidry's theory was not that Tejada had never followed him but that when he briefly lost sight of a first suspect, he erroneously reacquired Guidry, whom he followed out the door. Moreover, the evidence of guilt was overwhelming. Tejada identified Guidry as the person who broke open registers at Walmart and as the one person he followed, both before and after momentarily losing sight of him. And Guidry was immediately arrested outside the store with the hammer and the money in his possession. Therefore, any error was harmless under any standard. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [reversal is required under the federal Constitution unless the error was harmless beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [state law error requires reversal only if it is reasonably probable that the error had an effect on the verdict].)

10

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

FEDERMAN, J.*

---

*Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.