Filed 1/13/16  P. v. Bailey CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RAUSHAUN P. BAILEY,<br><br>        Defendant and Appellant. | A140997<br><br>(Sonoma County<br>Super. Ct. No. SCR635260) |

Following the denial of his motion to suppress, defendant and appellant Raushaun Bailey pleaded no contest to commercial burglary (Pen. Code, § 459).[1]  On appeal, he contends the trial court erred in denying his motion to suppress because the police officer did not have reasonable suspicion to detain him.  We disagree and affirm the judgment of conviction.

## BACKGROUND

Defendant made his motion to suppress following the filing of an information charging him with burglary of a commercial building (§ 459) and obstructing a law enforcement officer (§ 148, subd. (a)(1)).

For the motion, defense counsel agreed to a stipulated set of facts based on an offer of proof by the prosecution as to the testimony of Sonoma County Sheriff Deputy Michael Moriarty.  The offer of proof provided:

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

"At approximately [¶] . . . [¶] 1:23 in the afternoon, there was a dispatch to Cellular World in Windsor regarding a grab-and-run burglary that had occurred. The description that was given was three Black male adults that had left the scene in a gold Audi. That, in response to this information, Deputy Moriarty set up on Highway 101; that he saw a similar matching car pass his location. He followed the gold Audi, and, once behind the gold Audi, the gold Audi sped off, I believe it was from close to the Cotati Grade down to and into Petaluma; that he followed the vehicle in and out of traffic, and was able to tell that it was occupied by four adults, at which point he eventually lost sight of the vehicle, due to the chase and the speed, close to the area of East Washington Boulevard in Petaluma.

"It was during the chase that he was in fact updating dispatch regarding where the vehicle was headed and had requested assistance from surrounding agencies regarding the traffic stop and chase."

The prosecution then called Petaluma Police Officer Matthew Frick.

At approximately 1:42 p.m., while he was in uniform and in his patrol car, Officer Frick received a dispatch that Sonoma County Sheriff deputies were pursuing a vehicle, described as a gold Audi sedan occupied by four Black adult males, southbound on Highway 101. Initially he planned to deploy a spike strip at Lakeville and 101, but then heard the vehicle might have taken the Petaluma Boulevard North off ramp. On his way there, as he was crossing over Highway 101 on an overpass, he saw a gold sedan exiting at East Washington at a high rate of speed and radioed dispatch that he saw the suspect vehicle exit the freeway. He then saw the vehicle turn northbound from East Washington onto Ellis Street.

Officer Frick saw the vehicle "for a moment" on Ellis, but then lost sight of it. Close to the intersection of Ellis and Madison Streets, a pedestrian on Ellis told him, without explanation, "the vehicle I was looking for had turned into that apartment complex." He did a U-turn on Ellis, radioed in the information from the witness, requested that a perimeter be set up, and parked at the intersection of Ellis and Martin Circle, a locale he thought was the best for him to immediately set up a perimeter.

2

Moments after exiting his patrol car and unholstering his gun to set up a perimeter, he saw a Black male (defendant) exiting the apartment complex. At this point, approximately two minutes had elapsed from the time he had last seen the gold sedan.

Officer Frick was approximately 30 yards away from defendant and believed they made eye contact. Still with his gun out, Officer Frick began walking toward defendant.

Frick's testimony as to exactly what happened next is unclear. He testified initially: "As I sta[r]ted on the perimeter, I see him come out, he looks at me, and then he turns and walked the opposite direction from me." And when asked "what happened next," he said: "Mr. Bailey walked away. I identified myself as a police officer and told him to stop." However, "[h]e continued walking away." Officer Frick was then asked: "So it was from this initial distance of approximately 30 yards that you saw Mr. Bailey and had asked him to stop; correct?" Frick responded "Correct," and was next asked: "And it was after that that he turned away from you and walked away?" "Yes." At that point, Officer Frick ran after defendant and "continued to tell him to stop."

Defendant eventually stopped and was arrested. Officer Frick subsequently saw the gold Audi parked in between several of the apartment buildings.

After taking the matter under submission and asking for further briefing on the significance, if any, of defendant's effort to avoid the officer, the trial court denied the suppression motion. Although describing the situation as a "close call," the court concluded, based on the totality of the circumstances, that Officer Frick had had reasonable suspicion to make a detention. As to what transpired immediately after Officer Frick saw defendant, the trial court stated as follows: "[A]ccording to the testimony that was given, Mr. Bailey, made eye contact, and the defendant turned and walked in the opposite direction. They were approximately 30 yards apart. It was daylight. The officer was in full uniform, and had his firearm drawn. And the officer verbally identified himself as a police officer, ordered the defendant to stop by yelling at him from 30 yards away. At that point, defendant disobeyed the order and continued to walk away from the officer. And at that point, the officer ran toward defendant, or after him, again, yelling at him to stop."

3

Defendant subsequently pleaded no contest to the burglary charge and was placed on three years' probation subject to numerous terms and conditions, including nine months in the county jail.

## DISCUSSION

Where, as here, defendant makes his motion to suppress not at the preliminary hearing, but for the first time after the filing of the information, the superior court "sits as a finder of fact with ' "the power to judge credibility of the witness, resolve any conflicts, weigh the evidence[,] and draw factual inferences." ' " (*People v. Smith* (2009) 172 Cal.App.4th 1354, 1359–1360, quoting *In re Arturo D.* (2002) 27 Cal.4th 60, 77.) We accept the trial court's express and implied factual findings when they are supported by substantial evidence, but determine independently, on such accepted findings, whether the search or seizure was reasonable under the Fourth Amendment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.) In cases where the facts are essentially undisputed, we independently determine the constitutionality of the challenged search or seizure. (*People v. Balint* (2006) 138 Cal.App.4th 200, 205.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

The reasonable suspicion required for a detention is "less demanding than probable cause [required to make an arrest] 'not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' " (*Souza, supra*, 9 Cal.4th at pp. 230–231, quoting *Alabama v. White* (1990) 496 U.S. 325, 330.)

Defendant asserts Officer Frick had only a "hunch" the gold sedan he spotted going southbound on, and then exiting off of, Highway 101 was the Audi sedan the Sonoma County deputies were pursuing down the freeway, and thus Frick had no

4

articulable basis for detaining defendant outside the apartment complex. While defendant points out, Officer Frick did not know whether the gold sedan he spotted was actually an Audi and was never close enough to observe the occupants, we agree with the trial court that defendant is overlooking the bigger picture.

Within minutes of receiving the dispatch of the chase of the gold Audi with four Black male occupants headed south on Highway 101, Officer Frick observed a vehicle of like style and color headed southbound on 101 in a location one might expect. He then saw the gold sedan exit at a high rate of speed and saw it "for a moment" as it turned onto Ellis Street. A pedestrian on Ellis then told Frick the car he "was looking for" had turned into the apartment complex. Officer Frick immediately made a U-turn, parked, and commenced setting up a perimeter around the apartments. All told, Officer Frick estimated it was only two minutes from the time he last saw the gold sedan turning onto Ellis to when he saw defendant emerging from the apartments. While Officer Frick did not stop long enough to ask the pedestrian why he believed the officer was looking for the car he (the pedestrian) had seen, it is reasonable to infer the vehicle was speeding and for that reason had caught the pedestrian's attention. Officer Frick was thus acting on more than a mere "hunch." He possessed enough information to form a "reasonable suspicion" defendant might be involved in criminal activity to permit a brief detention to inquire further. (See *In re Tony C.* (1978) 21 Cal.3d 888, 894 ["The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal— to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' "], superseded on other grounds in Cal. Const. art. I, § 28.)[2]

In addition, the trial court found that upon Officer Frick and defendant making eye contact, defendant turned around and began walking the opposite direction—before

---

[2] See *People v. Turner* (2013) 219 Cal.App.4th 151, 160, footnote 8.

Frick yelled at him to stop. While Officer Frick's testimony about what happened immediately on seeing defendant emerge from the apartment complex was not entirely clear, it can reasonably be viewed as supporting the court's finding that defendant turned away from the officer and thus took evasive action, before being ordered to stop. It is well established that "flight in response to the appearance of a uniformed officer or a marked patrol car ordinarily is behavior that police may legitimately regard as suspicious, and therefore also can be a key *factor* in establishing reasonable cause to detain in a particular case." (*Souza*, *supra*, 9 Cal.4th at p. 227.) As the high court explained in *Souza*, "[t]here is an appreciable difference between declining to answer a police officer's questions during a street encounter and fleeing at the first sight of a uniformed police officer. Because the latter shows not only unwillingness to partake in questioning but also unwillingness to be observed and possibly identified, it is a much stronger indicator of consciousness of guilt." (*Id.* at pp. 234–235.)

We therefore conclude Officer Frick's detention of defendant was based on reasonable suspicion and lawful, and the trial court did not err in denying his motion to suppress.

## DISPOSITION

The judgment of conviction is affirmed.

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.

A140997, *People v. Bailey*

7